IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

FRED BATCHELDER,

                              Plaintiff,

            vs.                                    Civil Action No.
                                                   1:07-CV-00354 (LEK/DEP)


COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

MASTAITIS LAW OFFICE                STEPHEN J. MASTAITIS, JR.
1412 Route 9P
Saratoga Springs, NY 12866

FOR DEFENDANT

HON. ANDREW BAXTER                  ANDREEA LECHLEITNER, ESQ.
United States Attorney              Special Asst. U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL           BARBARA L. SPIVAK, ESQ.
Social Security Administration      Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Fred Batchelder, who suffers from neck and shoulder conditions as well as chronic obstructive pulmonary disease ("COPD"), commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging a determination of the Commissioner to the effect that he was not disabled at any time prior to the end of his insured status, and thus is not entitled to payment of disability insurance benefits.  Plaintiff argues that in arriving at that conclusion the administrative law judge ("ALJ") assigned to hear and determine the matter erroneously determined the date upon which his insured status ended, and in any event failed to take into account evidence supporting the conclusion that at the relevant times he was unable to perform any available work in the national and regional economies.  Plaintiff therefore asks that the Commissioner's determination be set aside and the matter remanded for further consideration including as to the question of his insured status.

Having carefully considered the record before the agency in the light of plaintiff's arguments, I find no basis to conclude that the agency erred in its assessment of plaintiff's insured status.  Addressing the question of

2

disability, I find that the evidence convincingly establishes that plaintiff's COPD did not progress to a point where it became disabling until long after his insured status expired, and that while plaintiff's neck and shoulder conditions predate his last insured date, they do not significantly restrict him in performing work-related functions.  Accordingly, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in January of 1956; at the time of the ALJ's decision in this matter, he was forty-eight years old.  Administrative Transcript at pp. 22, 60, 362.[1]  Plaintiff is a high school graduate, is divorced with one daughter, and lives with his mother in Mechanicville, New York.  AT 60-61, 184, 269.

Plaintiff has not worked since January of 2004.  AT 185.  Prior to that date plaintiff was employed in various settings, including as a panagraphic set up operator in a steel plant, an eyeglass assembler in an

---

[1]      Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 8, which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence that was before the agency when its decision was made, will be cited hereinafter as "AT ___."

optical store, and an automobile parts outside delivery person.  AT 185-86, 194-200.  Between 2001, when he left his automobile parts position, until he stopped working in 2004, and additionally extending on a part-time basis back to 1995, plaintiff was also self employed, operating a business rebuilding and selling go carts and go cart parts.  AT 202-04, 362-65.  In that position, plaintiff rebuilt engines and performed body work, wheel work, and work on fuel and oil lines, on occasion requiring him to lift up to thirty five pounds.  *Id.*  Plaintiff ultimately abandoned that business in or about December of 2003, based upon his inability to continue working due to his health.[2]  *Id.*

Over time, plaintiff has received treatment from several sources for various ailments, including principally a chronic degenerative disc condition in his cervical area, right shoulder pain, and COPD.  Certain of plaintiff's conditions can be traced back to a work -related accident which occurred in August of 1993, resulting in injury to his right shoulder and neck.  AT 254, 270.  Following the accident, plaintiff was seen at the Samaritan Hospital Emergency Room for evaluation and x-rays, which

---

[2]      In his disability report, plaintiff states he stopped working as a result of an illness which he thought was a cold or the flu, later learning after a visit to the hospital on January 26, 2004 that he suffered from COPD.  AT 185.

4

proved negative, and was released with a recommendation that he undergo a regimen of physical therapy.  AT 254.

Plaintiff's symptoms worsened over time, resulting in a referral from his treating physician to Dr. Richard F. Holub, M.D. for a neurological consultation in November of 2003.  AT 254.  The results of Dr. Holub's examination of plaintiff on November 18, 1994 were equivocal, and further testing was recommended by Dr. Holub.  AT 254-56.  In a follow-up report authored in March of 1994, Dr. Holub noted some modest degenerative changes in plaintiff's cervical spine, adding "I cannot confirm a more focal disc protrusion which would clearly document a clinically significant disc herniation."  AT 258.

While plaintiff was thereafter seen periodically over the next several years by Dr. George Forrest, ostensibly at the request of a workers' compensation insurance carrier, he does not appear to have undergone any further medical care or treatment of significance regarding his shoulder and neck injuries.  In his reports, Dr. Forrest noted the existence of an unchanged condition causing intermittent pain, which does not markedly restrict plaintiff's shoulder and neck range of motion.  *See,* AT 262-74.  Significantly, while Dr. Forrest's report from September of 1998

reveals plaintiff's use of Ibuprofen as needed to address his pain, *see* AT 264, subsequent reports beginning on November 3, 1998 and extending through October 2, 2000 reflect that during those periods plaintiff took no pain medication to address his shoulder and neck injuries.  AT 265-74.

On January 26, 2004, plaintiff presented at the St. Mary's Hospital, operated by Seton Health System Primary Care Facility in Troy, New York, complaining of shortness of breath and a cough which had increased in severity over the prior week.[3]  AT 277.  Plaintiff was diagnosed as suffering from severe COPD, with pulmonary function testing revealing that his lungs were functioning at less than .6 liters FEV1.  *Id.*  Plaintiff was discharged from the facility on February 1, 2004.  *Id.*

When seen at the hospital on February 13, 2004 for a follow-up visit, it was noted that plaintiff's condition was much improved, and he expressed a desire to continue with his go-cart enterprise, notwithstanding his COPD.  AT 300.   Following his hospitalization, plaintiff began treating with Dr. David Bruce, of Pulmonary and Critical Care Services, P.C. in Troy, New York, for his respiratory condition.  AT 305-29.

II.    <u>PROCEDURAL HISTORY</u>

---

[3]    It should be noted that at least up until the time of that hospitalization, plaintiff regularly smoked a pack of cigarettes daily.  AT 277.

A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits with the agency in February of 2004, alleging the existence of a disabling condition with an onset date of August 12, 1993.  AT 60-62.  Following the issuance of an initial determination denying plaintiff's application, *see* AT 35-38, a hearing was conducted by ALJ Guy Arthur on October 19, 2004, at plaintiff's request, to address his application for benefits.  AT 357-402.  Testifying at the hearing were the claimant, who was represented by counsel, and Donald Sliva, a vocational expert.  *Id.*

Following the hearing, on December 30, 2004, ALJ Arthur issued a written determination in which, after conducting a *de novo* review of the available evidence, including the testimony offered by plaintiff and the vocational expert during the hearing, he concluded that plaintiff was not disabled during the relevant times, and thus not entitled to receive disability insurance benefits.  In his decision, the ALJ applied the now-familiar five step test for determining disability.  At step one, the ALJ determined that notwithstanding the operation of his part-time go-cart part sales and rebuilding business, plaintiff had not engaged in substantial gainful activity at any point after the alleged onset of his disability,

7

although he added that plaintiff's part-time work could be regarded as evidence of his ability to perform work -related functions.  AT 22.  The ALJ next determined that plaintiff suffers from a cervical disorder and diagnosed pulmonary condition sufficiently limiting his ability to perform work-related functions as to qualify as severe for purposes of step two of the disciplinary algorithm, but at step three concluded that those conditions do not meet or equal any of the listed, presumptively disabling conditions set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically considering but rejecting Listings 1.02, 1.04, and 3.02.  AT 23-24.

Before proceeding further, the ALJ addressed plaintiff's contentions regarding his insured status.  After reviewing available records regarding plaintiff's earnings, the ALJ concluded that notwithstanding the arguments asserted by plaintiff and his counsel, he was last insured on March 31, 2000.  AT 27-28.

The ALJ next surveyed the available medical evidence to determine plaintiff's residual functional capacity ("RFC"), determining that as of March 31, 2000, deemed to be the last date upon which he enjoyed insured status, despite his conditions and resulting limitations plaintiff

8

[i]s able to lift and carry 20 pounds occasionally and 10 pounds frequently [note: the same is less than what the claimant himself admitted to being able to lift and carry through date last insured]; stand and walk 6 out of 8 hours; has no sitting restrictions; requires low stress, routine work {i.e. work requiring no more than moderate attention and concentration and, persistence and pace for prolonged period of time}; no climbing of ladders, ropes or scaffolds; no hazardous heights, and no hazardous moving machinery or exposure to extreme temperature changes; is able to occasionally climb stairs and ramps, balance, stoop, kneel, crouch, but no work involving crawling; while experiencing moderate [as defined] pain; with no concentrated exposure to dusts, fumes, chemicals, poor ventilation, excessive humidity, or excessive wetness or excessive vibration; kneel; has moderate [as defined] limitations in his ability to perform activities within a schedule and maintaining regular attendance for reliability purposes and being punctual within customary tolerances; and has moderate limitations as to completing a normal workday or week without an unreasonable length and number of rest periods.

AT 26.  The ALJ went on to characterize this RFC finding as the equivalent of concluding that plaintiff is limited to performing unskilled work at the light exertional level, with restrictions.[4]

_____

[4]      By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the

Proceeding to step four of the disability calculus, and examining the demands of plaintiff's past relevant work as a panagraphic set up operator, final assembler, parts manager and outside delivery worker, with the aid of testimony from the vocational expert regarding the exertional requirements of those positions, ALJ Arthur concluded that while Batchelder was incapable at the relevant times of fulfilling the requirements of a panagraphic operator, in view of its exertional level, he was capable of performing his other past relevant work.  AT 29.

Notwithstanding this finding at step four, and after acknowledging the shifting of burdens to the Commissioner, the ALJ proceeded to step five of the disability analysis.  Turning first to the medical vocational guidelines (the "grid") set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2, for use as a framework, the ALJ concluded the finding of not disabled was directed.  To confirm that finding the ALJ questioned the vocational expert concerning the availability of work suitable for plaintiff,

_____

> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

posing several hypothetical questions, one of which closely approximated his findings regarding plaintiff's capabilities.  AT 292-94.  Based upon the hypotheticals and the vocational expert's responses, ALJ Arthur concluded that there are jobs available in the national and regional economies capable of being performed by plaintiff citing, as examples, working as an assembler I, assembler II or electrical machine operator, all falling in the light category, as well as a final assembler, surveillance systems monitor, and preparer, catalogued by the vocational expert as sedentary in exertional level.   AT 30.

After ultimately concluding that plaintiff was not disabled for any continuous twelve month period prior to the date of his last insured status, and further that his conditions do not preclude him from performing either his past relevant work or, alternatively, available work in the national or local economies, the ALJ determined that plaintiff was not disabled during the relevant times.  AT 31.  The ALJ's decision became a final determination of the agency on March 22, 2007, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 6-9.

B.    This Action

11

Plaintiff commenced this action on April 3, 2007.  Dkt. No. 1.  Issue was thereafter joined by the filing of an answer on May 30, 2007, Dkt. No. 7, followed by the Commissioner's submission of an administrative transcript, comprised of the evidence and proceedings before the agency, on June 19, 2007.  Dkt. No. 8.   With the filing of plaintiff's brief on August 14, 2007, Dkt. No. 10, and that on behalf of the Commissioner on August 20, 2007, Dkt. No. 11, the matter is now ripe for determination, and has been referred to me for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[5]

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is

---

[5]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

13

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Burgess v. Astrue,* 537 F.3d. 117, 127 (2d Cir. 2008) (citations omitted); *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson,* 402 U.S. at 401, 91 S. Ct. at 1427 ).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams,* 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone,* 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone,*

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only

15

> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at

16

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>The Evidence In This Case</u>

        1.    <u>Plaintiff's Insured Status</u>

One of the issues raised before the agency, and again in support of

his present challenge to the Commissioner's determination, is the appropriateness of the assigned March 31, 2000 date as the last date upon which he qualified for insured status.  During the administrative hearing, plaintiff's counsel formally moved to have the date moved forward to at least December, 2001.  AT 266-67.  To support that request, and with permission from ALJ Arthur, *see* AT 400, plaintiff submitted more than one hundred pages of tax records, together with a letter requesting recalculation of the DLI.  *See* AT 65 - 178.  Based upon his review of those records, the ALJ concluded that the previously-determined DLI was properly calculated, and should not be altered.  AT 27.  That finding was specifically addressed and upheld by the Social Security Administration Appeals Council.  AT 7.

In support of his challenge to the Commissioner's determination, plaintiff once again advances this issue.  He does not, however, directly state in what way the ALJ's determination of the issue resulted from a misapplication of proper legal principles, nor does he indicate how the ultimate result would be altered if the DLI were to be adjusted to December of 2001, or further.

To be eligible for disability insurance benefits, an applicant must be

"insured for disability benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1).  An applicant's "insured status" is generally dependent upon a ratio of accumulated "quarters of coverage" to total quarters.  *Id.* at § 423(c)(1)(B). "Quarters of coverage" include quarters in which the applicant earned certain amounts of wages or self-employment income.  20 C.F.R. §§ 404.101(b), 404.140-404.146.  In light of his age, to be fully insured plaintiff needed at least forty quarters of Social Security coverage.  20 C.F.R. §§ 404.110(b), 404.115.  In addition, with exceptions not applicable here, plaintiff must have qualified for insured status for at least twenty quarters within any prior forty quarter period.  20 C.F.R. § 404.130(b); *see Arnone v. Bowen*, 882 F.2d 34, 37 (1989).

Under the agency's guidelines a quarter of coverage, which is determined by an individual's earnings, *see* 20 C.F.R. § 404.140, is based upon income, evaluated against the backdrop of the following prescribed minimums:

| Year | Applicable Minimum |
|------|--------------------|
| 1993 | $590 |
| 1994 | $620 |
| 1995 | $630 |
| 1996 | $640 |
| 1997 | $679 |
| 1998 | $700 |
| 1999 | $740 |

|      |       |
|------|-------|
| 2000 | $780  |
| 2001 | $830  |
| 2002 | $870  |
| 2003 | $890  |

Social Security Agency Program Operations Manager ("POMS") RS

00301.250.[6]

The DLI is described as the last day in the last quarter when

disability insurance status is met.  DOMS RS 00301.148.  In this instance

the agency's records reveal, and indeed plaintiff's submissions

substantiate, the following earnings, and thus corresponding quarters of

coverage:

| Year | Earnings    | Quarters |
|------|-------------|----------|
| 1990 | $19,819.51  | Four     |
| 1991 | $14,763.76  | Four     |
| 1992 | $20,351.09  | Four     |
| 1993 | $17,784.18  | Four     |
| 1994 | -0-         | -0-      |
| 1995 | $3,852.00   | Four     |
| 1996 | -0-         | -0-      |
| 1997 | -0-         | -0-      |
| 1998 | $1,044.00   | One      |
| 1999 | -0-         | -0-      |
| 2000 | $  629.14   | -0-      |
| 2001 | $6,802.79   | Four     |
| 2002 | $2,635.00   | Three    |

---

[6]     The POMS, while not the result of formal rule-making, are nonetheless deserving of substantial deference.  *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *See also Washington State Dep't of Social and Heath Srv. v. Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 1026 (2003).

Applying the foregoing principles to plaintiff's circumstances, the calculation of March 31, 2000 as the plaintiff's DLI is proper.  The use of any more recent date, as advocated by the plaintiff, would fail to satisfy the requirement of twenty months of coverage out of forty quarters.  Accordingly, the Commissioner did not err in establishing plaintiff's DLI.

It should further be noted that whether plaintiff's DLI was properly established to be March 31, 2000, or instead should have extended to December of 2001, as maintained by plaintiff, does not appear to alter the disability analysis in this case.  The record firmly establishes that the onset of plaintiff's potentially disabling COPD did not occur until shortly before his hospitalization in January of 2004.  *See* AT 277, 281.  Plaintiff's shoulder and cervical spine conditions, moreover, appear by all accounts, including from reports authored by Dr. Forrest, to have been completely static in or about 2000, and there is no evidence that it worsened from October of 2000 to a point when it became disabling.  Indeed, it appears that plaintiff was working part-time in the latter part of 2000 and in 2001, performing small motor repair, and taking no medications, with three quarter range of motion in his neck and full range of motion in his shoulder, and thus those conditions cannot be considered as having

significantly limited his ability to perform work-related functions during that period.

>    2.    Treating Physician

In this first argument addressing the merits of the ALJ's determination, plaintiff contends that the ALJ's decision failed to accord controlling weight to the opinions of his treating physicians.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling,

---

[7]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927(d)(2)-(6)(setting forth several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examinations by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion)).

Despite the deference to which a treating physician's opinions are ordinarily entitled, the ultimate finding of whether a claimant is disabled

and cannot work is "reserved to the Commissioner."  20 C.F.R. §

404.1527(e)(1).  Explaining the regulation, the Second Circuit has offered

"that the Social Security Administration considers the data that physicians

provide but draws its own conclusions as to whether those data indicate

disability.  A treating physician's statement that the claimant is disabled

cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

1999).

When a treating physician's opinions are repudiated, the ALJ must

provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  Failure to apply the appropriate legal standards for

considering a treating physician's opinions is a proper basis for reversal

and remand, as is the failure to provide reasons for rejection of his or her

opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-

17.

In support of his treating physician argument, plaintiff cites opinions

of Dr. David H. Bruce, Dr. George Forrest, and Dr. Andrew Alpart.  It is

unclear, however, which opinions of those physicians, plaintiff contends,

were improperly rejected.

Dr. Bruce, who treats plaintiff for his COPD, saw plaintiff in January

24

of 2004, well after his DLI date.  AT 330.  In a letter elicited by counsel in November of 2004, Dr. Bruce observed that it is unlikely his severe COPD condition developed over only one week, as reported by the plaintiff, but candidly added "I am unable to comment as to when his lung function abnormality would be sufficiently severe to be disabling for him, but it certainly would have occurred prior to his 2004 hospital admission."  AT 330.   The record is wholly devoid of any statements from Dr. Bruce that would suggest the existence of a potentially disabling condition prior to plaintiff's DLI.

The same holds true with respect to Dr. Alpart, who also saw plaintiff for the first time in January of 2004.  AT 331.  Also at the request of plaintiff, Dr. Alpart noted on November 17, 2004 that plaintiff claims to have experienced "shortness of breath and chronic obstructive lung disease since 2000," without making a further comment concerning whether there is any medical evidence to support that claim.   AT 331.

The only one of the three physicians named by plaintiff who saw him during the relevant period was Dr. Forrest, who can hardly be considered as a treating source since it was clearly his function to examine Batchelder over the relevant time for purposes of determining whether,

and if so to what extent, he suffered from disability for workers'

compensation purposes.[8]  Casting aside Dr. Forrest's statements

regarding disability, which touch upon a matter expressly reserved to the

Commissioner, plaintiff fails to cite, nor has the court found, any

statements in Dr. Forrest's reports which indicate the existence of

limitations greater than those discerned by the ALJ when arriving at his

finding of no disability.  Dr. Forrest's reports reflect the existence of an

unchanged condition with limited, if any, effect on plaintiff's range of

motion, and for the most part untreated by even the most modest of pain

medications.  AT 262 - 274.   It should be noted, moreover, that the record

is devoid of any evidence that plaintiff sought and obtained treatment for

his condition after initial neurological consultations in 1994.

   In sum, despite plaintiff's protestations it does not appear that the

ALJ rejected any treating physician opinions bearing upon his condition

prior to this DLI.

---

[8]    It should be noted that disability standards under the Act differ
significantly from those applicable under various state's Workers'  Compensation
Laws. *Crowe v. Comm'r of Soc. Sec.*, No. 01-CV-1579, 2004 WL 1689758, at *3
(N.D.N.Y. July 20, 2004) (Sharpe, J.) (citing *Gray v. Chater*, 903 F. Supp. 293, 301 n.8
(N.D.N.Y. 1995) ("Workers' compensation determinators are directed to the workers'
prior employment and measure the ability to perform that employment rather than
using the definition of disability in the Social Security Act.")).

3.    Plaintiff's Credibility

In support of his challenge to the Commissioner's decision, plaintiff also maintains that in arriving at his determination, including his RFC finding, the ALJ improperly rejected his subjective complaints of disabling pain as not entirely credible.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*, 615 F.2d 27).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach

an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[9]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may

---

[9]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

The statements cited by plaintiff in support of this argument relate principally to limitations caused by COPD.[10]  The record, however, is lacking in any medical evidence to support plaintiff's claims that the condition caused him to experience disabling discomfort prior to his DLI, and indeed any such claim would fly in the face of his report, when

---

[10]   Plaintiff's brief fails to identify any portion of plaintiff's hearing testimony which describes his disabling pain or discomfort at the relevant times.  Rather, plaintiff's references are to a disability report and related documents prepared in March of 2004, in support of plaintiff's application for benefits, and obviously describing his condition as of that point in time.  *See, e.g.* Plaintiff's Memorandum (Dkt. No. 10) at p. 5 (unnumbered).

admitted to the hospital in January of 2004, that the symptoms leading

him to seek emergent treatment had occurred only over the prior week.

Under the circumstances, the ALJ properly discounted any potential

subjective testimony of plaintiff regarding his COPD, as not bearing upon

the relevant time period, as well as any testimony addressing the modest

limitations associated with this back and neck injury.

IV.   SUMMARY AND RECOMMENDATION

Plaintiff, who was last insured in March of 2000 and thereafter

continued to work building and selling go cart engines and parts through

2003, requiring him to lift up to thirty-five pounds through 2003, claims to

have been disabled prior to the date upon which he was last insured and,

alternatively, questions the ALJ's determination regarding his DLI.

Addressing first plaintiff's insured status, analysis of the records contained

in the administrative transcript firmly establishes that the determination

comports with the principles associated with establishing a claimant's DLI,

and is amply supported by the evidence in the record.  Addressing next

the question of disability prior to that date, it appears that plaintiff's

cervical and shoulder conditions did not significantly limit his ability to

perform work functions, and indeed presented an unchanged condition

requiring no medication or treatment and presenting few, if any, work -related limitations during the relevant period.  While plaintiff does concededly now suffer from severe COPD, imposing a significant limitation on his ability to perform work -related functions, the record firmly establishes, and plaintiff himself has reported, that his symptoms did not ripen to a point requiring treatment until January of 2004, well after the expiration of his insured status.  Under these circumstances, the ALJ's decision that plaintiff was not disabled prior to his DLI resulted from the application of proper legal principles and is supported by substantial evidence in the record.  Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1);  FED. R. CIV. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    May 14, 2009
             Syracuse, NY